FILED

2019 MAY -7 PM 4: 21

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CA.
LOS ANGELES

BY:_____

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                     January 2019 Grand Jury

11   UNITED STATES OF AMERICA,         CR No. **19CR00282** - RGk

12              Plaintiff,             I N D I C T M E N T

13         v.                          [18 U.S.C. § 371: Conspiracy; 18
                                       U.S.C. § 1343: Wire Fraud; 18
14   ZHONGTIAN LIU,                    U.S.C. § 545: Passing False and
          aka "Liu Zhongtian,"         Fraudulent Papers Through
15        aka "Chairman,"              Customhouse; 18 U.S.C.
          aka "Uncle Liu,"             § 1956(a)(2)(A): International
16        aka "UL,"                    Promotional Money Laundering; 18
          aka "Big Boss,"              U.S.C. § 2: Aiding and Abetting
17   CHINA ZHONGWANG HOLDINGS          and Causing an Act to Be Done; 18
          LIMITED,                     U.S.C. §§ 545, 981(a)(1)(C), and
18        aka "ZW,"                    982 and 28 U.S.C. § 2461(c):
          aka "Mother Ship,"           Criminal Forfeiture]
19   ZHAOHUA CHEN,
          aka "Chen Zhaohua,"
20        aka "Uncle Chen,"
     XIANG CHUN SHAO,
21        aka "Johnson Shao,"
     PERFECTUS ALUMINIUM INC.,
22        aka "Perfectus Aluminum
          Inc.,"
23   PERFECTUS ALUMINUM ACQUISITIONS,
          LLC,
24   SCUDERIA DEVELOPMENT, LLC,
     1001 DOUBLEDAY, LLC,
25   VON KARMAN — MAIN STREET, LLC, and
     10681 PRODUCTION AVENUE, LLC,
26
              Defendants.
27

28

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment, unless otherwise indicated:

Defendants ZHONGTIAN LIU and CHINA ZHONGWANG HOLDINGS LIMITED

1.   Defendant ZHONGTIAN LIU, also known as ("aka") "Liu Zhongtian," aka "Chairman," aka "Uncle Liu," aka "UL," aka "Big Boss" ("defendant LIU"), was a lawful permanent resident of the United States and a citizen of the People's Republic of China ("PRC").

2.   Defendant LIU controlled defendant CHINA ZHONGWANG HOLDINGS LIMITED, aka "ZW," aka "Mother Ship" ("defendant CHINA ZHONGWANG"). Defendant LIU owned Zhongwang International Group Limited ("ZIGL"), which was the parent company of defendant CHINA ZHONGWANG.  Through his ownership of ZIGL, defendant LIU was the controlling shareholder of defendant CHINA ZHONGWANG.  Defendant LIU was the President of defendant CHINA ZHONGWANG from at least as early as in or about May 2009 until his resignation from that position in or about March 2016, and was also the Chairman of the Board of Directors of defendant CHINA ZHONGWANG from at least as early as in or about May 2009 until his resignation from that position in or about November 2017.

3.   Defendant CHINA ZHONGWANG was an aluminum company headquartered in Liaoyang City, Liaoning Province, in the PRC. Defendant CHINA ZHONGWANG described itself in its 2012 Annual Report as "a leading industrial aluminum extrusion product developer and manufacturer in the world," and was the largest aluminum extrusion manufacturer in Asia and the second largest in the world.  Aluminum

2

extrusions result from a process by which aluminum alloy is transformed into objects such as T-bars or tubes.

4.   Defendant CHINA ZHONGWANG wholly owned Zhongwang China Investment (HK) Limited; Liaoning Zhongwang Group Company, Limited; and Liaoning Zhongwang Import & Export Trade Company Limited; among other wholly-owned subsidiaries (together with defendant CHINA ZHONGWANG and ZIGL, "the ZW Group").

5.   On or about May 8, 2009, shares of defendant CHINA ZHONGWANG were listed on the Main Board of the Stock Exchange of Hong Kong Limited ("SEHK") through an Initial Public Offering ("IPO"). The IPO was one of the world's largest in 2009 and raised capital for defendant CHINA ZHONGWANG of approximately $1.26 billion.

6.   The SEHK required defendant CHINA ZHONGWANG to publish its financial reports on a regular basis.  These reports were issued to enable investors to make informed investment decisions.  Defendant CHINA ZHOGNWANG published the required reports in the form of annual reports, which, among other things, reported on the operations and financial performance of defendant CHINA ZHONGWANG, including detailed information about defendant CHINA ZHONGWANG's revenue, cost of sales, gross profit, assets, and liabilities.

7.   In its annual reports, defendant CHINA ZHONGWANG also reported its significant related party transactions.  Defendant CHINA ZHONGWANG defined related parties as, among others: (a) any person, or close member of that person's family, who had control or joint control or significant influence over defendant CHINA ZHONGWANG, or who was a member of the key management personnel of defendant CHINA ZHONGWANG or ZIGL; (b) an entity controlled or jointly controlled by a person identified in (a); or (c) an entity over which a person who

1   had control or joint control over the ZW Group had significant

2   influence or was a member of the key management personnel of the

3   entity or parent of the entity.

4       8.   In addition to annual reports, defendant CHINA ZHONGWANG

5   made disclosures to its potential and current investors regarding

6   specific issues, including in response to news reports and certain

7   allegations of wrongdoing made by third parties about defendant CHINA

8   ZHONGWANG ("specific disclosures").

9   <u>Defendant ZHAOHUA CHEN</u>

10       9.   Defendant ZHAOHUA CHEN, aka "Chen Zhaohua," aka "Uncle

11   Chen" ("defendant CHEN"), was a resident of the PRC and Hong Kong.

12   Defendant CHEN was a close friend of defendant LIU.

13   <u>Defendants XIANG CHUN SHAO; PERFECTUS ALUMINIUM INC.;</u>

14   <u>and PERFECTUS ALUMINUM ACQUISITIONS, LLC</u>

15       10.   Defendant XIANG CHUN SHAO, aka "Johnson Shao" ("defendant

16   SHAO"), was a resident of the Central District of California.

17       11.   Beginning at least as early as in or about 2008 and

18   continuing through at least in or about 2014, defendant SHAO, acting

19   at the direction of defendant LIU, managed the following entities

20   (collectively, the "PERFECTUS predecessor entities"), which were

21   incorporated in California between in or about January 2004 and in or

22   about August 2010: Pengcheng Aluminum Enterprise, Inc. ("PCA");

23   Century American Aluminum, Inc. ("CAA"); Global Aluminum (USA), Inc.

24   ("Global Aluminum"); American Apex Aluminum, Inc. ("AAA"); Aluminum

25   Source, Inc. ("Aluminum Source"); Transport Aluminum, Inc.

26   ("Transport Aluminum"); and Aluminum Industrial, Inc. ("Aluminum

27   Industrial").

28       12.   The principal office of each of the PERFECTUS predecessor

1    entities was located in Walnut or Ontario, California, within the

2    Central District of California.

3         13.  On or about July 28, 2006, a bank account ending in 9191 in

4    the name of PCA was opened at Cathay Bank in the City of Industry,

5    California, within the Central District of California ("PCA Account

6    9191").

7         14.  On or about August 26, 2011, a bank account ending in 2058

8    in the name of Transport Aluminum was opened at Cathay Bank in the

9    City of Industry, California, within the Central District of

10   California ("Transport Account 2058").

11        15.  On or about December 4, 2014, defendant PERFECTUS ALUMINIUM

12   INC., aka "Perfectus Aluminum Inc." ("defendant PERFECTUS") was

13   incorporated in California by unindicted co-conspirator 1 ("CC-1").

14   CC-1 was a close family member of defendant LIU.  Defendant

15   PERFECTUS's principal office was located in Ontario, California,

16   within the Central District of California.  In or about 2016,

17   defendant SHAO was appointed as a manager of defendant PERFECTUS.

18        16.  On or about December 10, 2014, defendant PERFECTUS ALUMINUM

19   ACQUISITIONS, LLC ("defendant PERFECTUS ACQUISITIONS") was formed in

20   Delaware.  Defendant PERFECTUS ACQUISITIONS was a wholly-owned

21   subsidiary of defendant PERFECTUS.  On or about December 31, 2014,

22   the PERFECTUS predecessor entities were merged into defendant

23   PERFECTUS ACQUISITIONS.  At the time of the merger, all assets,

24   obligations, and liabilities of the PERFECTUS predecessor entities

25   were transferred to and assumed by defendant PERFECTUS ACQUISITIONS.

26        17.  At the time of the merger of the PERFECTUS predecessor

27   entities and defendant PERFECTUS ACQUISITIONS, CC-1 was the sole

28   officer of each of the PERFECTUS predecessor entities and defendant

1  PERFECTUS, as well as the manager of defendant PERFECTUS

2  ACQUISITIONS.

3      18.  Following the merger: (a) defendant PERFECTUS continued the

4  business operations of the PERFECTUS predecessor entities and in some

5  instances, operated under the name of one or more of the PERFECTUS

6  predecessor entities; (b) defendants PERFECTUS and PERFECTUS

7  ACQUISITIONS were separated only by corporate form and acted as one

8  entity; (c) defendant PERFECTUS ACQUISITIONS was a disregarded entity

9  for tax purposes; (d) defendant PERFECTUS included all of the

10 PERFECTUS predecessor entities' assets and liabilities on defendant

11 PERFECTUS's financial statements and tax returns; and (e) regardless

12 of the corporate form and names of the entities, the PERFECTUS

13 predecessor entities and defendants PERFECTUS and PERFECTUS

14 ACQUISITIONS were all effectively owned and controlled by defendant

15 LIU and were all operated pursuant to his directions.

16      Defendants SCUDERIA DEVELOPMENT, LLC; 1001 DOUBLEDAY, LLC;

17      VON KARMAN – MAIN STREET, LLC; and 10681 PRODUCTION AVENUE, LLC

18      19.  On or about October 22, 2007, defendant SCUDERIA

19 DEVELOPMENT, LLC ("defendant SCUDERIA DEVELOPMENT") was formed in

20 Delaware.  On or about October 28, 2014, defendant SCUDERIA

21 DEVELOPMENT purchased a 600,000 square foot warehouse located at

22 14600 Innovation Drive, Riverside, California, within the Central

23 District of California (the "Riverside Warehouse").  Defendant LIU

24 effectively owned and controlled defendant SCUDERIA DEVELOPMENT and

25 the Riverside Warehouse.

26      20.  On or about October 27, 2008, defendant 1001 DOUBLEDAY, LLC

27 ("defendant 1001 DOUBLEDAY") purchased a 394,000 square foot

28 warehouse located at 1001 South Doubleday Avenue, Ontario,

1  California, within the Central District of California (the "Ontario

2  Warehouse").  Defendant LIU effectively owned and controlled

3  defendant 1001 DOUBLEDAY and the Ontario Warehouse.

4      21.  On or about March 31, 2009, defendant VON KARMAN – MAIN

5  STREET, LLC ("defendant VON KARMAN – MAIN STREET") purchased a

6  260,000 square foot warehouse located at 2323 Main Street, Irvine,

7  California, within the Central District of California (the "Irvine

8  Warehouse").  Defendant LIU effectively owned and controlled

9  defendant VON KARMAN – MAIN STREET and the Irvine Warehouse.

10      22.  On or about September 11, 2009, defendant 10681 PRODUCTION

11  AVENUE, LLC ("defendant 10681 PRODUCTION AVENUE") purchased a 1.1

12  million square foot warehouse located at 10681 Production Avenue,

13  Fontana, California, within the Central District of California (the

14  "Fontana Warehouse").  Defendant LIU effectively owned and controlled

15  defendant 10681 PRODUCTION AVENUE and the Fontana Warehouse.

16    Other Aluminum Companies Controlled by Defendant LIU

17      23.  From at least as early as in or about November 2010, and

18  continuing at least to the date of this Indictment, Aluminicaste

19  Fundición de México ("Aluminicaste") was an aluminum company

20  headquartered in Mexico.  Aluminicaste was effectively owned and

21  controlled by defendant LIU.

22      24.  On or about December 1, 2012, Global Aluminum purchased an

23  entity later known as Aluminum Shapes LLC, aka "Shapes LLC," aka

24  "Delair Aluminum, LLC" ("Aluminum Shapes"), an aluminum company

25  located in Delair, New Jersey.  Following the merger of Global

26  Aluminum and the remaining PERFECTUS predecessor entities into

27  defendant PERFECTUS ACQUISITIONS, Aluminum Shapes was wholly owned

28  by, and became an asset of, defendants PERFECTUS and PERFECTUS

ACQUISITIONS.  Defendant LIU effectively owned and controlled Aluminum Shapes.

25.  From at least as early as in or about 2013, Global Vietnam Aluminum ("GVA") was an aluminum company headquartered in Vietnam. GVA was effectively owned and controlled by defendant LIU.

The 2011 Anti-Dumping and Countervailing Duties Orders
Regarding Aluminum Imported By ZW Group

26.  The United States Department of Commerce ("DOC") and the United States International Trade Commission ("USITC") regulated commerce in the United States, and, as part of their responsibilities, had the authority to impose duties on certain foreign imports.  Among other duties, the DOC and USITC imposed anti-dumping and countervailing duties ("AD/CVD").  AD/CVD orders were formal determinations issued by the DOC and USITC that AD/CVD duties should be collected by U.S. Customs and Border Protection ("CBP") on imports of a particular product from specified countries and companies.  AD/CVD orders were intended to ensure fair competition between United States companies and foreign industry, and to counter international price discrimination that caused injury to United States domestic industries.

27.  In or about April 2010, the USITC and DOC initiated an investigation of whether AD/CVD duties should be imposed on imports of certain aluminum extrusions from the PRC.

28.  On or about May 26, 2011, the DOC issued an AD order and a CVD order ("2011 AD/CVD Orders") that imposed enhanced CVD duties of 374.15% on certain aluminum extrusions imported from the ZW Group and AD duties of 33.28% on certain aluminum extrusions imported from the PRC.  The 2011 AD/CVD Orders exempted from AD/CVD duties any finished

merchandise, which was defined by DOC as products that were fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, picture frames with glass pane and backing material, and solar panels.

29. CBP was responsible for, among other things, the examination of merchandise entering the United States through ports and other points of entry to ensure that the merchandise was admissible under, and in compliance with United States laws; and the assessment and collection of all applicable taxes, fees, and duties, including AD/CVD duties, on imported merchandise.

30. CBP Form 7501 ("Form 7501" or "Entry Summary") required importers, or their agents, to provide truthful information relating to imported merchandise, including: a description of the merchandise; the identity of the merchandise's manufacturer, its value, and country of origin; the entry type; and the AD/CVD rate, if any. A customhouse broker or agent normally handled the process of entering goods into the United States on behalf of an importer, which process included completing entry documents, including Form 7501, based on information provided by the importer, and filing the completed Form 7501 with CBP on behalf of the importer. Entry type "01" was the entry type to be used when the goods at issue in the Form 7501 were free and dutiable. Entry type "03" was the entry type to be used when the goods at issue in the Form 7501 were subject to applicable AD/CVD orders.

31. The Port of Los Angeles and the Port of Long Beach (collectively referred to by CBP as the "Los Angeles/Long Beach Seaport") were ports located within the Central District of California.

B.   THE OBJECTS OF THE CONSPIRACY

32.   Beginning in or about July 2008 and continuing to at least the date of this Indictment, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants LIU, CHINA ZHONGWANG, CHEN, SHAO, PERFECTUS, PERFECTUS ACQUISITIONS, SCUDERIA DEVELOPMENT, 1001 DOUBLEDAY, VON KARMAN - MAIN STREET, and 10681 PRODUCTION AVENUE, and others known and unknown to the Grand Jury, knowingly combined, conspired and agreed with each other to: (I) knowingly and intentionally defraud the United States and an agency thereof by impeding, impairing, obstructing, and defeating the lawful functions of a government agency, namely, CBP, by deceitful and dishonest means; and (II) commit offenses against the United States, namely:

a.   Wire Fraud, in violation of Title 18, United States Code, Section 1343;

b.   Passing False and Fraudulent Papers Through Customhouse, in violation of Title 18, United States Code, Section 545; and

c.   International Promotional Money Laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

C.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
     ACCOMPLISHED

33.   The objects of the conspiracy were carried out, and were to be carried out, in substance as follows:

a.   Defendants LIU, CHINA ZHONGWANG, CHEN, SHAO, PERFECTUS, PERFECTUS ACQUISITIONS, SCUDERIA DEVELOPMENT, 1001 DOUBLEDAY, VON KARMAN - MAIN STREET, and 10681 PRODUCTION AVENUE, would agree to, and would, engage in deceptive acts in order to:

i.    Fraudulently induce investors in defendant CHINA ZHONGWANG to purchase and hold shares of defendant CHINA ZHONGWANG by:

(I)   falsely inflating the value of defendant CHINA ZHONGWANG at the time of the IPO through false representations, including that an independent third party had made a $200 million loan to ZIGL in advance of the IPO;

(II) falsely inflating the sales revenue of defendant CHINA ZHONGWANG through false representations and pretenses, including the false representation that the vast majority of defendant CHINA ZHONGWANG's sales were made at arm's length, and the concealment of material facts, including that defendant CHINA ZHONGWANG's sales to the PERFECTUS predecessor entities, defendant PERFECTUS, and certain aluminum shell companies in the PRC were not arms-length transactions and were funded by money ultimately provided by defendants LIU, CHINA ZHONGWANG, and CHEN;

(III)    falsely inflating the volume of defendant CHINA ZHONGWANG's exports to the United States and the strength of the demand in the United States for its products through false representations and pretenses, including the false representation and pretense that market demand for certain aluminum products manufactured by defendant CHINA ZHONGWANG was the reason for defendant CHINA ZHONGWANG's increased exports to the United States after the 2011 AD/CVD Orders, and the concealment of material facts, including that the PERFECTUS predecessor entities and defendant PERFECTUS's purchases from defendant CHINA ZHONGWANG were not based on market demand from third-party customers and the purchased aluminum was simply being stockpiled; and

11

1    (IV) falsely inflating the overall financial
2    position of defendant CHINA ZHONGWANG through the concealment of
3    material facts, including that defendant CHINA ZHONGWANG's revenues
4    included purchases that defendants LIU, CHINA ZHONGWANG, and CHEN had
5    funded, and that its related parties had liabilities arising from the
6    related parties' purported purchases from defendant CHINA ZHONGWANG,
7    namely, approximately $1.8 billion in AD/CVD duties due to CBP.

8    ii.  Fraudulently conceal from the CBP and the United
9    States Treasury that aluminum that the PERFECTUS predecessor entities
10   and defendants LIU, CHINA ZHONGWANG, and SHAO were importing and
11   causing to be imported into the United States was subject to duties
12   imposed by the 2011 AD/CVD Orders, thereby evading approximately $1.8
13   billion in duties owed to the United States; and

14   iii. Engage in monetary transactions that allowed
15   defendant CHINA ZHONGWANG to secretly fund the purchases of aluminum
16   imported into the United States from defendant CHINA ZHONGWANG,
17   thereby enabling: (a) defendants to maintain the false pretense that
18   defendant CHINA ZHONGWANG was obtaining significant revenue from
19   sales of aluminum to United States-based customers even though there
20   were few, if any, such sales; (b) defendants to continue to evade
21   applicable AD/CVD duties; and (c) defendant LIU to transfer valuable
22   assets, namely bulk quantities of aluminum, from defendant CHINA
23   ZHONGWANG in the PRC to entities in the United States that defendant
24   LIU controlled.

25   The Fraudulent Inflation of Defendant CHINA ZHONGWANG's
26   Financial Statements

27   b.  Defendants LIU and CHINA ZHONGWANG would cause
28   defendant CHINA ZHONGWANG's shares to be listed on the Main Board of

the SEHK.  In order to induce investors to purchase and hold shares of defendant CHINA ZHONGWANG, both at the time of the IPO and thereafter, defendants LIU and CHINA ZHONGWANG would cause defendant CHINA ZHONGWANG to issue an IPO prospectus, annual reports, and specific disclosures that would contain materially false statements regarding, among other things, defendant CHINA ZHONGWANG's sales, revenue, U.S. export program, and related party transactions.

c.   In order to complete the IPO and falsely inflate the value of defendant CHINA ZHONGWANG, defendant LIU would direct an unindicted co-conspirator ("CC-2") to transfer approximately $200 million to ZIGL as a purported loan when, in fact, ZIGL did not intend to repay the loan and the transfer of the funds was identified as a loan in order to conceal that the funds for the purported loan had originated from accounts controlled by defendants LIU, CHINA ZHONGWANG, and CHEN.  Defendants LIU and CHINA ZHONGWANG would cause the IPO prospectus to falsely state that the purported loan originated from an independent third party.

d.   Defendants LIU, CHINA ZHONGWANG, and SHAO, and other co-conspirators, would use the PERFECTUS predecessor entities and defendant PERFECTUS to purchase aluminum from defendant CHINA ZHONGWANG, the ZW Group, and the aluminum shell companies, as defined below in paragraph 33(g), that had been manufactured by defendant CHINA ZHONGWANG and the ZW Group.

e.   Defendants LIU and CHINA ZHONGWANG would conceal their connection to the PERFECTUS predecessor entities and defendants PERFECTUS and PERFECTUS ACQUISITIONS by, among other means, purporting to transfer ownership and control of the PERFECTUS predecessor entities and defendant PERFECTUS to defendant SHAO, CC-1,

13

1    and/or other purported third parties when, in fact, defendant LIU

2    effectively owned and controlled the PERFECTUS predecessor entities

3    and defendants PERFECTUS and PERFECTUS ACQUISITIONS.

4         f.   In order to conceal defendants LIU and CHINA

5    ZHONGWANG's connection to the PERFECTUS predecessor entities and

6    defendants PERFECTUS and PERFECTUS ACQUISITIONS, defendants LIU,

7    CHINA ZHONGWANG, SHAO, and PERFECTUS, the PERFECTUS predecessor

8    entities, and other co-conspirators, would falsely represent the

9    nature of the relationships among the PERFECTUS predecessor entities

10   and defendants CHINA ZHONGWANG and PERFECTUS in communications with,

11   and in documents submitted to, among others, the USITC, the few

12   third-party customers who purchased aluminum extrusions from the

13   PERFECTUS predecessor entities and defendant PERFECTUS, and the

14   Internal Revenue Service ("IRS").

15        g.   In order to conceal that defendant CHINA ZHONGWANG

16   and/or the ZW Group was the source of the aluminum being sold to the

17   PERFECTUS predecessor entities, defendants LIU, CHINA ZHONGWANG, and

18   CHEN, and other co-conspirators, would identify shell companies (the

19   "aluminum shell companies") as the nominal sellers of this aluminum.

20   The names of the shell companies would conceal and not disclose the

21   connection between defendants LIU and CHINA ZHONGWANG and the

22   aluminum shell companies.  The aluminum shell companies were

23   controlled by defendants LIU, CHINA ZHONGWANG, and CHEN.  The

24   aluminum shell companies included, but were not limited to: Dalian

25   Liwang Trade Co., Ltd. ("Dalian Liwang"); Tianjin Boruixin Co., Ltd.

26   ("Boruixin"); Yingkou Qianxiang Trade Co. Ltd. ("Qianxiang"); and

27   Gran Cabrio Capital Pte. Ltd. ("Gran Cabrio").

28        h.   Following the issuance of the 2011 AD/CVD Orders,

defendants LIU and CHINA ZHONGWANG would cause the aluminum extrusions being imported by the PERFECTUS predecessor entities to be shipped to the United States in the form of pallets (the "aluminum pallets"). Because there were no customers for these aluminum pallets, defendants LIU and CHINA ZHONGWANG would sometimes cause emails to be sent to defendant SHAO to enable him to create fake purchase orders for the aluminum pallets. The emails would state the form and quantity of the aluminum pallets that defendants LIU and CHINA ZHONGWANG already intended to, and would, export to the United States to be imported by the PERFECTUS predecessor entities for the purported sale to the PERFECTUS predecessor entities' supposed customers. In other instances, defendants SHAO and the PERFECTUS predecessor entities would create purchase orders after being told by defendant CHINA ZHONGWANG that a shipment of aluminum extrusions in the form of pallets was already en route to the Ports of Los Angeles and Long Beach. Although prior to the 2011 AD/CVD Orders, defendants LIU and CHINA ZHONGWANG had not exported, and defendant SHAO and the PERFECTUS predecessor entities had not imported, any aluminum extrusions in the form of pallets, defendants LIU, CHINA ZHONGWANG, CHEN, and SHAO would cause the PERFECTUS predecessor entities to import into the United States approximately 2,200,000 such pallets between in or about 2011 and in or about 2014. At the direction of defendant LIU, none of these pallets was ever sold.

i. At the direction of defendant LIU, defendants SCUDERIA DEVELOPMENT, 1001 DOUBLEDAY, VON KARMAN – MAIN STREET, and 10681 PRODUCTION AVENUE would purchase the Riverside, Ontario, Irvine, and Fontana Warehouses, respectively.

j. At the direction of defendant LIU, defendants SHAO,

1  PERFECTUS, SCUDERIA DEVELOPMENT, 1001 DOUBLEDAY, VON KARMAN — MAIN

2  STREET, and 10681 PRODUCTION AVENUE, and the PERFECTUS predecessor

3  entities, would stockpile and cause to be stockpiled the aluminum

4  extrusions in the form of pallets purchased from the ZW Group and the

5  aluminum shell entities at the Irvine, Ontario, Fontana, and

6  Riverside Warehouses, and at Aluminum Shapes in New Jersey.  By

7  stockpiling and causing to be stockpiled the aluminum extrusions in

8  the form of pallets, defendants LIU, SHAO, PERFECTUS, SCUDERIA

9  DEVELOPMENT, 1001 DOUBLEDAY, VON KARMAN — MAIN STREET, and 10681

10  PRODUCTION AVENUE maintained the pretense that the sales of the

11  aluminum pallets to the PERFECTUS predecessor entities were actual

12  sales to customers in the United States.

13        k.   In order to maintain the pretense that the PERFECTUS

14  predecessor entities and defendant PERFECTUS were purchasing the

15  aluminum from defendant CHINA ZHONGWANG and/or the ZW Group and

16  thereby generating revenue for defendant CHINA ZHONGWANG, defendants

17  LIU and CHINA ZHONGWANG would cause invoices for the aluminum to be

18  sent to defendants SHAO and PERFECTUS, and the PERFECTUS predecessor

19  entities.  Defendant CHINA ZHONGWANG would also direct employees of

20  the ZW Group to email defendant SHAO and others seeking payment on

21  outstanding invoices.

22        l.   The value of the aluminum purportedly purchased by the

23  PERFECTUS predecessor entities from the ZW Group and the aluminum

24  shell companies greatly exceeded the revenue the PERFECTUS

25  predecessor entities obtained from actual sales.  As a result, the

26  PERFECTUS predecessor entities did not have sufficient funds to pay

27  for the aluminum they were importing.  Accordingly, defendants SHAO

28  and PERFECTUS, and the PERFECTUS predecessor entities, would request

16

1    funding from defendant CHINA ZHONGWANG to pay the invoices from

2    defendant CHINA ZHONGWANG and/or ZW Group.

3          m.    After receiving funding requests from defendants SHAO

4    and PERFECTUS, defendants LIU, CHINA ZHONGWANG, and CHEN, and other

5    co-conspirators, would transfer and cause the transfer by wire of

6    funds worth hundreds of millions of dollars to bank accounts

7    controlled by defendants SHAO, PERFECTUS, and PERFECTUS ACQUISITIONS,

8    and the PERFECTUS predecessor entities.  The funds would originate in

9    bank accounts controlled by defendants LIU, CHINA ZHONGWANG, and

10   CHEN, but held in the names of shell companies in order to conceal

11   the origin, ownership, and control of the funds (collectively, the

12   "financial shell companies").  These financial shell companies

13   included, but were not limited to, Anhe Trading Co.; Best Success

14   Holdings Limited; Bright Rich Investments Limited; DNH Trading Co.

15   Limited; Easy Able International (HK); Fast Growth Co.; Grand Famous

16   Trading Limited; Guanghui Great Exploit (HK) Limited; Guocang Trade

17   Limited; HK De Ming Trade Co. Limited; Kingson Co.; Kingnuo

18   Communication Electronics Co., Ltd.; Kong Yum Trading Co.; Kun Hong

19   Trade Co., Ltd.; Money Top Trading, Ltd.; Porter (International)

20   Supplies; Rainbow Bright Inc. Limited; Rui Yin Co.; and SNS Great

21   Cause Investment Ltd.

22         n.    Defendant SHAO would cause the receipt of funds from

23   the financial shell companies to be recorded as loans on the books

24   and in the records of the PERFECTUS predecessor entities and

25   defendant PERFECTUS when, in truth and in fact, the funds were not

26   loans and the PERFECTUS predecessor entities and defendant PERFECTUS

27   never intended to repay the funds. As of on or about December 31,

28   2014, the PERFECTUS predecessor entities had recorded on their

17

1  balance sheets a cumulative total of at least approximately $1.2

2  billion in purported loans, the vast majority of which originated

3  from the financial shell companies.

4        o.   After receiving funds from the financial shell

5  companies, defendants SHAO and PERFECTUS, and the PERFECTUS

6  predecessor entities, would cause funds to be transferred by wire

7  from bank accounts in the name of defendant PERFECTUS and the

8  PERFECTUS predecessor entities, located within the Central District

9  of California, to bank accounts in the name of entities within the ZW

10 Group, located in Hong Kong and the PRC, and the bank accounts of the

11 aluminum shell companies, located in Hong Kong and the PRC.

12       p.   Defendant LIU would cause defendant CHINA ZHONGWANG to

13 falsely record the sales to defendant PERFECTUS and the PERFECTUS

14 predecessor entities made directly by the ZW Group and through the

15 aluminum shell companies on defendant CHINA ZHONGWANG's financial

16 statements as arms-length transactions.  Defendant CHINA ZHONGWANG

17 would further falsely record the funds received from defendant

18 PERFECTUS, the PERFECTUS predecessor entities, and the aluminum shell

19 companies as revenue, thereby fraudulently increasing the overall

20 revenue recorded by defendant CHINA ZHONGWANG and making it appear as

21 though defendant CHINA ZHONGWANG's financial position and export

22 program were stronger than they, in fact, were.

23       q.   Defendant LIU would cause defendant CHINA ZHONGWANG to

24 issue annual reports containing materially false statements and

25 omissions.  These false statements and omissions would be material to

26 investors in defendant CHINA ZHONGWANG.

27       r.   At the direction of defendant LIU, defendant CHINA

28 ZHONGWANG's annual reports would falsely state, among other things,

that:

    i. all of the purported sales to the PERFECTUS predecessor entities and defendant PERFECTUS and aluminum shell companies were arms-length sales to customers;

    ii. there was high demand for deep-processed aluminum products, namely, aluminum pallets, that resulted in increasing sales and exports to the United States; and

    iii. all funds received from defendants SHAO and PERFECTUS, and the PERFECTUS predecessor entities, and the aluminum shell companies, were revenue.

   s. Further, at the direction of defendant LIU, defendant CHINA ZHONGWANG would fail to disclose, among other things, that:

    i. defendant LIU effectively owned and controlled the PERFECTUS predecessor entities and defendants PERFECTUS and PERFECTUS ACQUISITIONS;

    ii. defendants LIU and CHINA ZHONGWANG controlled the aluminum shell companies;

    iii. defendants LIU and CHINA ZHONGWANG had directed the PERFECTUS predecessor entities to purchase aluminum manufactured and sold by defendant CHINA ZHONGWANG and the ZW Group;

    iv. defendants LIU and CHINA ZHONGWANG had directed that, after the 2011 AD/CVD Orders, the aluminum be imported as aluminum extrusions in the form of pallets, for which there was no customer demand;

    v. purported sales to the PERFECTUS predecessor entities and aluminum shell companies were related party transactions; and

    vi. defendants LIU and CHINA ZHONGWANG had provided

the funds for the purchase of the aluminum.

t.   After allegations of fraud were publicly made against defendants LIU and CHINA ZHONGWANG, defendants LIU and CHINA ZHONGWANG would cause false specific disclosures to be issued to investors and potential investors.  In particular, defendant CHINA ZHONGWANG would issue specific disclosures falsely stating that: defendant LIU did not control defendant PERFECTUS and the PERFECTUS predecessor entities, Dalian Liwang, Boruixin, Qianxiang, GVA, and Aluminicaste; all sales not reported as related party transactions were arms-length transactions; and defendant CHINA ZHONGWANG had not provided the funding for the aluminum purchased by any of its customers.  These false statements were material to investors in defendant CHINA ZHONGWANG.

u.   After allegations of fraud were publicly made against defendants LIU and CHINA ZHONGWANG, and in order to impede any investigations into the allegations, defendants LIU, SHAO, PERFECTUS, SCUDERIA DEVELOPMENT, 1001 DOUBLEDAY, VON KARMAN - MAIN STREET, and 10681 PRODUCTION AVENUE would cause the aluminum stored at the Irvine, Ontario, Fontana, and Riverside Warehouses to be exported to GVA.

v.   After allegations of fraud were publicly made against defendants LIU and CHINA ZHONGWANG and in order to lull investors into believing defendant CHINA ZHONGWANG's prior disclosures, defendant LIU would cause unindicted co-conspirators to falsely claim ownership of defendant PERFECTUS, the aluminum imported by the PERFECTUS predecessor entities, and the Ontario, Irvine, Fontana, and Riverside Warehouses.

w.   By causing defendant CHINA ZHONGWANG to make the

20

1   above-described material false statements regarding defendant CHINA

2   ZHONGWANG's assets, revenue, and overall financial position to

3   investors, defendant LIU fraudulently inflated the value of his own

4   shares in defendant CHINA ZHONGWANG as well as his creditworthiness

5   and the creditworthiness of defendant CHINA ZHONGWANG.   Through the

6   above-described material false statements and concealment of material

7   facts, defendants LIU and CHINA ZHONGWANG also exposed the remaining

8   shareholders of defendant CHINA ZHONGWANG to the risk that defendant

9   CHINA ZHONGWANG would plummet in value when defendant CHINA

10  ZHONGWANG's fraudulent business practices were discovered.

11      The Evasion of Duties under the 2011 AD/CVD Orders

12          x.   Prior to the AD/CVD investigation and 2011 AD/CVD

13  Orders, defendants LIU and CHINA ZHONGWANG would direct defendant

14  SHAO and the PERFECTUS predecessor entities to purchase aluminum

15  extrusions from the ZW Group and aluminum shell companies and import

16  them into the United States through the Ports of Los Angeles and Long

17  Beach.   Although the PERFECTUS predecessor entities sold some of the

18  aluminum extrusions imported from the ZW Group and aluminum shell

19  companies to third-party customers, the PERFECTUS predecessor

20  entities would stockpile the vast majority of the aluminum extrusions

21  at the Irvine, Ontario, and Fontana Warehouses.

22          y.   The 2011 AD/CVD Orders imposed substantial costs on

23  the importation of certain aluminum extrusions into the United States

24  from certain Chinese companies, including the ZW Group.   To

25  circumvent the AD/CVD duties, defendants LIU, CHINA ZHONGWANG, and

26  CHEN, and other co-conspirators, would export, and defendants SHAO

27  and PERFECTUS and the PERFECTUS predecessor entities would import,

28  aluminum extrusions in the form of pallets, that is, the extrusions

21

1  would be tack-welded into the shape of pallets, which would then

2  enter the United States through the Ports of Los Angeles and Long

3  Beach, as well as the Port of New York and New Jersey, as purported

4  finished merchandise not subject to duties under the 2011 AD/CVD

5  Orders.

6          z.    In order to ensure that the plan to circumvent the

7  AD/CVD duties would work, defendants LIU and CHEN would cause several

8  test shipments containing aluminum extrusions in the form of pallets

9  to be imported by entities other than the PERFECTUS predecessor

10 entities, including Berlinetta Trading, LLC ("Berlinetta Trading").

11         aa.   Defendants LIU, CHINA ZHONGWANG, CHEN, and SHAO, and

12 other co-conspirators, would cause the PERFECTUS predecessor entities

13 to falsely identify on Form 7501 the aluminum extrusions in the form

14 of pallets as finished merchandise that would not be subject to the

15 2011 AD/CVD Orders, when, in truth and in fact, and as defendants

16 LIU, CHINA ZHONGWANG, CHEN, and SHAO then well knew, the aluminum

17 extrusions in the form of pallets were not finished merchandise.  By

18 falsely identifying the pallets as finished merchandise, the

19 PERFECTUS predecessor entities were able to evade paying

20 approximately $1.8 billion in AD/CVD duties.

21         bb.   By stockpiling and causing to be stockpiled the

22 aluminum fraudulently imported as finished merchandise not subject to

23 duties under the 2011 AD/CVD Orders, defendants LIU, SHAO, PERFECTUS,

24 SCUDERIA DEVELOPMENT, 1001 DOUBLEDAY, VON KARMAN — MAIN STREET, and

25 10681 PRODUCTION AVENUE maintained the pretense that the aluminum

26 extrusions in the form of pallets were finished merchandise that had

27 been sold to customers in the United States and prevented the CBP

28 from discovering that it was extrusions subject to AD/CVD duties.

22

cc.   Knowing that the aluminum imported as pallets was, in fact, nothing more than extrusions that had been tack-welded together to enable defendants LIU, CHINA ZHONGWANG, CHEN, and SHAO, and other co-conspirators, to falsely claim it was finished merchandise not subject to the 2011 AD/CVD Orders, and that there were no customers for the aluminum extrusions in the form of pallets, the vast majority of which were too heavy to be usable as pallets, defendants LIU and CHINA ZHONGWANG would direct that aluminum melting facilities be built and acquired to be used to reconfigure the aluminum imported as pallets into a form with commercial value.

D.   OVERT ACTS

34.   On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants LIU, CHINA ZHONGWANG, CHEN, SHAO, PERFECTUS, PERFECTUS ACQUISITIONS, SCUDERIA DEVELOPMENT, 1001 DOUBLEDAY, VON KARMAN – MAIN STREET, and 10681 PRODUCTION AVENUE, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California and elsewhere:

Overt Act No. 1:   In or about July 2008, defendant LIU caused approximately $195,633,053 to be transferred through intermediary entities to a bank account held at United Commercial Bank in the name of Scuderia Capital Partners, LLC ("the Scuderia Capital Partners Account").

Overt Act No. 2:   On or about July 28, 2008, CC-1 resigned as a manager of Scuderia Capital Partners, LLC ("Scuderia Capital").

Overt Act No. 3:   On or about July 28, 2008, defendant LIU

23

directed CC-2 to transfer approximately $100,000,000 to ZIGL from the Scuderia Capital Partners Account.

Overt Act No. 4:    In or about August 2008, defendant LIU caused approximately $4,999,960 to be transferred through intermediary entities to the Scuderia Capital Partners Account.

Overt Act No. 5:    On or about August 5, 2008, defendant LIU directed CC-2 to transfer approximately $90,000,000 to ZIGL from the Scuderia Capital Partners Account.

Overt Act No. 6:    On or about August 7, 2008, defendant LIU directed CC-2 to transfer approximately $10,000,000 to ZIGL from the Scuderia Capital Partners Account.

Overt Act No. 7:    On or about October 27, 2008, defendant LIU caused defendant 1001 DOUBLEDAY to purchase the Ontario Warehouse for the purpose of stockpiling aluminum.

Overt Act No. 8:    On or about December 3, 2008, defendants LIU and SHAO caused to be filed with the California Secretary of State a PCA Statement of Information identifying defendant SHAO as the CEO, Secretary, CFO, and sole director of PCA.

Overt Act No. 9:    On or about March 31, 2009, defendant LIU caused defendant VON KARMAN - MAIN STREET to purchase the Irvine Warehouse for the purpose of stockpiling aluminum.

Overt Act No. 10:    On or about April 24, 2009, defendants LIU and CHINA ZHONGWANG caused an IPO prospectus to be issued.  The IPO prospectus falsely stated that ZIGL had obtained a $200 million loan from Scuderia Capital for the purposes of completing the IPO.  The prospectus falsely stated that the shareholder and director of Scuderia Capital were not "connected persons" to defendant CHINA ZHONGWANG.  The prospectus failed to disclose that defendant LIU

24

controlled Scuderia Capital and that defendant LIU, through intermediaries, had provided Scuderia Capital the funds for its purported $200 million loan to ZIGL.

Overt Act No. 11:   On or about May 8, 2009, defendant LIU caused defendant CHINA ZHONGWANG to be listed on the Main Board of the SEHK.

Overt Act No. 12:   On or about September 11, 2009, defendant LIU caused defendant 10681 PRODUCTION AVENUE to purchase the Fontana Warehouse for the purpose of stockpiling aluminum.

Overt Act No. 13:   On or about January 8, 2010, defendant SHAO sent an email to defendant CHEN and attached a record of previous wire transfers for Global Aluminum.  The attachment listed wire transfers to and from some of the financial shell companies, including, Kong Yum Trading Co. and Kingson Co.

Overt Act No. 14:   In or about April 2010, defendant LIU caused defendant CHINA ZHONGWANG to release its 2009 annual report, which stated that sales to the United States accounted for 40.8% of defendant CHINA ZHONGWANG's overall revenue in 2009, up from just 1.9% in 2008.

Overt Act No. 15:   On or about April 21, 2010, an unindicted co-conspirator ("CC-3") falsely testified before the USITC that PCA was owned and operated independently from the company's suppliers in the PRC.

Overt Act No. 16:   In or about late 2010, defendants LIU and CHEN met with CC-2 at the Irvine Warehouse to discuss ways to circumvent the DOC and USITC's likely imposition of AD/CVD orders.

Overt Act No. 17:   On or about October 28, 2010, defendant SHAO sent an email to an employee of the ZW Group updating the ZW Group

about the DOC's preliminary AD/CVD order imposed against Chinese aluminum.

Overt Act No. 18:   On or about October 28, 2010, defendant SHAO called defendant LIU to update him about the DOC's preliminary AD/CVD order, but did not reach defendant LIU.

Overt Act No. 19:   On or about December 7, 2010, defendant SHAO, using text provided to him by an employee of the ZW Group, sent an email to an employee of Zhongwang China Investment (HK) Limited requesting a quote for an order of 520 aluminum pallets.

Overt Act No. 20:   On or about January 17, 2011, at the direction of an employee of the ZW Group, defendant SHAO sent an email to an employee of Zhongwang China Investment (HK) Limited stating that PCA was satisfied with the quality of the aluminum pallets and intended to place additional orders soon.

Overt Act No. 21:   On or about January 29, 2011, a then-Executive Director of defendant CHINA ZHONGWANG sent an email to defendant SHAO asking for documents previously submitted to the USITC by the PERFECTUS predecessor entities.  The requested documents falsely claimed that the PERFECTUS predecessor entities were not related to any Chinese extrusion companies.

Overt Act No. 22:   On or about February 9, 2011, defendant SHAO submitted documents to the USITC falsely claiming that PCA was not related to any Chinese extrusion companies.

Overt Act No. 23:   In or about March 2011, defendant LIU caused defendant CHINA ZHONGWANG to release its 2010 annual report, which stated that sales to the United States accounted for 29.1% of defendant CHINA ZHONGWANG's overall revenue in 2010, and that the decline in revenue from 2009 was attributable to the USITC and DOC's

1    AD/CVD investigation.

2         Overt Act No. 24:   On or about June 30, 2011, at the direction

3    of defendants LIU and CHEN, an unindicted co-conspirator caused a

4    customs broker to submit to CBP on behalf of Berlinetta Trading the

5    Form 7501 for the importation of a test shipment from Dalian Liwang

6    of approximately 1,422 aluminum pallets valued at approximately

7    $406,617.   The Form 7501 falsely claimed that the aluminum pallets

8    were not subject to the 2011 AD/CVD Orders.

9         Overt Act No. 25:   On or about July 13, 2011, at the direction

10   of defendants LIU and CHEN, an unindicted co-conspirator caused a

11   customs broker to submit to CBP on behalf of Berlinetta Trading the

12   Form 7501 for the importation of a second test shipment from Dalian

13   Liwang of approximately 1,530 aluminum pallets valued at

14   approximately $338,218.   The Form 7501 falsely claimed that the

15   aluminum pallets were not subject to the 2011 AD/CVD Orders.

16        Overt Act No. 26:   On or about July 21, 2011, at the direction

17   of defendants LIU and CHEN, an unindicted co-conspirator caused a

18   customs broker to submit to CBP on behalf of Berlinetta Trading the

19   Form 7501 for the importation of a third test shipment from Dalian

20   Liwang of approximately 756 aluminum pallets valued at approximately

21   $290,769.   The Form 7501 falsely claimed that the aluminum pallets

22   were not subject to the 2011 AD/CVD Orders.

23        Overt Act No. 27:   On or about September 28, 2011, defendant

24   SHAO caused PCA's customs broker to submit to CBP the Form 7501 for

25   the importation from Boruixin of approximately 1,764 aluminum pallets

26   valued at approximately $635,040.   The Form 7501 falsely claimed that

27   the aluminum pallets were not subject to the 2011 AD/CVD Orders.

28        Overt Act No. 28:   On or about November 25, 2011, defendant

SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 3,024 aluminum pallets valued at approximately $1,097,712.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 29:  On or about January 27, 2012, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 6,732 aluminum pallets valued at approximately $1,279,080.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 30:  In or about April 2012, defendant LIU caused defendant CHINA ZHONGWANG to release its 2011 annual report, which stated that sales to the United States accounted for 3.9% of defendant CHINA ZHONGWANG's overall revenue in 2011, and that the decline in revenue from 2010 was the result of the continuing AD/CVD investigation in the United States.

Overt Act No. 31:  On or about May 10, 2012, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 4,590 aluminum pallets valued at approximately $872,100.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 32:  On or about July 9, 2012, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 6,552 aluminum pallets valued at approximately $2,358,720.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD

Orders.

Overt Act No. 33:   On or about September 10, 2012, defendant SHAO sent an email to two employees of the ZW Group falsely stating that PCA would be placing additional aluminum pallet orders due to requests by PCA's customers even though, as defendant SHAO then well knew, PCA had not sold any of the aluminum pallets PCA had previously imported.

Overt Act No. 34:   On or about September 20, 2012, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Qianxiang of approximately 6,048 aluminum pallets valued at approximately $1,874,880.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 35:   On or about December 1, 2012, at the direction of defendant LIU, defendant SHAO used Global Aluminum, a PERFECTUS predecessor entity, to purchase an aluminum mill in Delair, New Jersey.

Overt Act No. 36:   In or about 2013, defendant LIU directed CC-2 to build an aluminum melting facility on land previously purchased by an entity effectively owned and controlled by defendant LIU in Barstow, California, within the Central District of California, for the purpose of melting the aluminum pallets imported from the PRC.

Overt Act No. 37:   On or about January 11, 2013, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 9,180 aluminum pallets valued at approximately $1,496,340.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 38:   On or about March 14, 2013, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 15,120 aluminum pallets valued at approximately $5,367,600.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 39:   On March 24, 2013, defendant SHAO sent an email to an employee of the ZW Group requesting the transfer of funds to the PERFECTUS predecessor entities.  Defendant SHAO asked for the request to be approved as directed by the Board of Directors.

Overt Act No. 40:   In or about April 2013, defendant LIU caused defendant CHINA ZHONGWANG to release its 2012 annual report, which stated that sales to the United States accounted for 8.32% of defendant CHINA ZHONGWANG's overall revenue in 2012.  Defendant CHINA ZHONGWANG attributed the increase in sales to the United States in 2012 to defendant CHINA ZHONGWANG's plan to focus on deep-processed industrial aluminum products, namely, aluminum pallets, which could be sold as finished products and were not subject to 2011 AD/CVD Orders.

Overt Act No. 41:   On or about April 8, 2013, defendant SHAO sent an email to an employee of the ZW Group attaching a spreadsheet detailing the funding needs of the PERFECTUS predecessor entities.

Overt Act No. 42:   On or about August 8, 2013, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 6,804 aluminum pallets valued at approximately $2,381,400.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 43:   On or about September 23, 2013, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 2,520 aluminum pallets valued at approximately $882,000.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 44:   On or about October 18, 2013, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Qianxiang of approximately 3,276 aluminum pallets valued at approximately $1,058,148.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 45:   In or about April 2014, defendant LIU caused defendant CHINA ZHONGWANG to release its 2013 annual report, which stated that sales to the United States accounted for 11.8% of defendant CHINA ZHONGWANG's overall revenue in 2013.  Defendant CHINA ZHONGWANG attributed the increase in sales to the United States in 2013 to defendant CHINA ZHONGWANG's efforts to expand production of deep-processed products, namely, aluminum pallets, to meet increasing demand for these products in the United States.

Overt Act No. 46:   On or about May 5, 2014, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 16,128 aluminum pallets valued at approximately $5,644,800.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 47:   On or about May 5, 2014, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 8,568 aluminum

1  pallets valued at approximately $2,998,800.  The Form 7501 falsely

2  claimed that the aluminum pallets were not subject to the 2011 AD/CVD

3  Orders.

4      Overt Act No. 48:   On or about May 9, 2014, defendant SHAO

5  caused PCA's customs broker to submit to CBP the Form 7501 for the

6  importation from Dalian Liwang of approximately 13,356 aluminum

7  pallets valued at approximately $4,674,600.  The Form 7501 falsely

8  claimed that the aluminum pallets were not subject to the 2011 AD/CVD

9  Orders.

10      Overt Act No. 49:   On or about May 19, 2014, defendant SHAO

11  caused PCA's customs broker to submit to CBP the Form 7501 for the

12  importation from Dalian Liwang of approximately 14,364 aluminum

13  pallets valued at approximately $5,027,400.  The Form 7501 falsely

14  claimed that the aluminum pallets were not subject to the 2011 AD/CVD

15  Orders.

16      Overt Act No. 50:   On or about May 22, 2014, defendant SHAO

17  caused PCA's customs broker to submit to CBP the Form 7501 for the

18  importation from Dalian Liwang of approximately 4,032 aluminum

19  pallets valued at approximately $1,411,200.  The Form 7501 falsely

20  claimed that the aluminum pallets were not subject to the 2011 AD/CVD

21  Orders.

22      Overt Act No. 51:   On or about May 23, 2014, defendant SHAO

23  caused PCA's customs broker to submit to CBP the Form 7501 for the

24  importation from Dalian Liwang of approximately 10,584 aluminum

25  pallets valued at approximately $3,704,400.  The Form 7501 falsely

26  claimed that the aluminum pallets were not subject to the 2011 AD/CVD

27  Orders.

28      Overt Act No. 52:   On or about May 28, 2014, defendant SHAO

caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Zhongwang China Investment (HK) Limited of approximately 1,530 aluminum pallets valued at approximately $244,800.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 53:   On or about May 30, 2014, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 10,584 aluminum pallets valued at approximately $3,704,400.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 54:   On or about June 5, 2014, defendants LIU, CHINA ZHONGWANG, and CHEN caused the transfer of approximately $999,975 from an account in the name of Rainbow Bright Inc. Limited held in Hong Kong to PCA Account 9191.

Overt Act No. 55:   On or about June 6, 2014, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the importation from Dalian Liwang of approximately 6,048 aluminum pallets valued at approximately $2,116,800.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 56:   On or about June 19, 2014, defendant SHAO directed the transfer of approximately $1,126,080 from PCA Account 9191 to an account in the name of Zhongwang China Investment (HK) Limited held in Hong Kong as payment for the purchase of approximately 7,038 aluminum pallets.

Overt Act No. 57:   On or about June 27, 2014, defendant SHAO caused PCA's customs broker to submit to CBP the Form 7501 for the

importation from Dalian Liwang of approximately 10,080 aluminum pallets valued at approximately $3,528,000.  The Form 7501 falsely claimed that the aluminum pallets were not subject to the 2011 AD/CVD Orders.

Overt Act No. 58:  On or about July 3, 2014, defendants LIU, CHINA ZHONGWANG, and CHEN caused the transfer of approximately $989,975 from an account in the name of Rainbow Bright Inc. Limited held in Hong Kong to PCA Account 9191.

Overt Act No. 59:  On or about July 11, 2014, defendant SHAO directed the transfer of approximately $4,463,359 from PCA Account 9191 to an account in the name of Dalian Liwang held in the PRC as payment for the purchase of approximately 12,096 aluminum pallets.

Overt Act No. 60:  On or about July 16, 2014, defendants LIU, CHINA ZHONGWANG, and CHEN caused the transfer of approximately $1,539,975 from an account in the name of Grand Famous Trading Limited held in Hong Kong to PCA Account 9191.

Overt Act No. 61:  On or about July 21, 2014, defendant SHAO directed the transfer of approximately $8,558,512 from PCA Account 9191 to an account in the name of Dalian Liwang held in the PRC as payment for the purchase of aluminum products, including approximately 34,002 aluminum pallets.

Overt Act No. 62:  On or about July 25, 2014, defendants LIU, CHINA ZHONGWANG, and CHEN caused the transfer of approximately $1,699,976 from an account in the name of Grand Famous Trading Limited held in Hong Kong to PCA Account 9191.

Overt Act No. 63:  On or about August 5, 2014, defendants LIU, CHINA ZHONGWANG, and CHEN caused the transfer of approximately $599,975 from an account in the name of Kun Hong Trade Co., Limited

34

held in Hong Kong to PCA Account 9191.

Overt Act No. 64:   On or about August 5, 2014, defendants LIU, CHINA ZHONGWANG, and CHEN caused the transfer of approximately $949,975 from an account in the name of Grand Famous Trading Limited held in Hong Kong to the PCA Account 9191.

Overt Act No. 65:   On or about August 5, 2014, defendants LIU, CHINA ZHONGWANG, and CHEN caused the transfer of approximately $1,049,975 from an account in the name of Grand Famous Trading Limited held in Hong Kong to PCA Account 9191.

Overt Act No. 66:   On or about August 5, 2014, defendants LIU, CHINA ZHONGWANG, and CHEN caused the transfer of approximately $3,099,975 from an account in the name of Kun Hong Trade Co., Limited held in Hong Kong to PCA Account 9191.

Overt Act No. 67:   On or about August 5, 2014, defendant SHAO directed the transfer of approximately $244,800 from PCA Account 9191 to an account in the name of Zhongwang China Investment (HK) Limited held in Hong Kong as payment for the purchase of approximately 1,530 aluminum pallets.

Overt Act No. 68:   On or about August 6, 2014, defendant SHAO directed the transfer of approximately $5,027,807 from PCA Account 9191 to an account in the name of Dalian Liwang held in the PRC as payment for the purchase of approximately 13,860 aluminum pallets.

Overt Act No. 69:   On or about August 20, 2014, defendant SHAO sent an email to an employee of the ZW Group requesting funds for the rent and operational expenses of Aluminum Industrial and CAA.

Overt Act No. 70:   In or about October 2014, defendants LIU and CHEN caused a total of approximately $28,899,700 to be transferred from Easy Able International (HK) to a bank account in the name of

35

defendant SCUDERIA DEVELOPMENT.

Overt Act No. 71:   On or about October 9, 2014, defendants LIU and CHEN caused approximately $3,099,975 to be transferred from Kun Hong Trade Co. Limited to a bank account in the name of defendant SCUDERIA DEVELOPMENT.

Overt Act No. 72:   On or about October 10, 2014, defendants LIU and CHEN caused approximately $1,269,975 to be transferred from Best Earning Trading Limited to a bank account in the name of defendant SCUDERIA DEVELOPMENT.

Overt Act No. 73:   On or about October 10, 2014, defendants LIU and CHEN caused approximately $1,389,975 to be transferred from Group Like Limited to a bank account in the name of defendant SCUDERIA DEVELOPMENT.

Overt Act No. 74:   On or about October 10, 2014, defendants LIU and CHEN caused approximately $3,199,958 to be transferred from Golden Shield Investment Limited to a bank account in the name of defendant SCUDERIA DEVELOPMENT.

Overt Act No. 75:   On or about October 14, 2014, defendants LIU and CHEN caused approximately $639,979 to be transferred from Group Like Limited to a bank account in the name of defendant SCUDERIA DEVELOPMENT.

Overt Act No. 76:   On or about October 14, 2014, defendants LIU and CHEN caused approximately $6,499,975 to be transferred from Kun Hong Trade Co., Limited to a bank account in the name of defendant SCUDERIA DEVELOPMENT.

Overt Act No. 77:   On or about October 17, 2014, defendants LIU and CHEN caused the transfer of approximately $1,299,975 from an account in the name of Easy Able International (HK) held in Hong Kong

to PCA Account 9191.

Overt Act No. 78:   On or about October 28, 2014, defendant LIU caused defendant SCUDERIA DEVELOPMENT to purchase the Riverside Warehouse for the purpose of stockpiling aluminum.

Overt Act No. 79:   On or about October 29, 2014, defendant LIU caused defendant SCUDERIA DEVELOPMENT to transfer by means of wire approximately $42,864,450 to a title company in connection with the purchase of the Riverside Warehouse.

Overt Act No. 80:   On or about November 25, 2014, CC-1 caused to be filed with the California Secretary of State a PCA Statement of Information indicating that CC-1 had replaced defendant SHAO as the CEO, Secretary, and CFO of PCA.   Defendant LIU continued to effectively own and control PCA.

Overt Act No. 81:   On or about December 8, 2014, at the direction of defendant SHAO, an employee of PCA submitted a funding request to an employee of the ZW Group for the rent and expenses for AAA, Aluminum Industrial, Aluminum Source, and CAA for the period of October 2014 through January 2015.

Overt Act No. 82:   On or about December 31, 2014, at the direction of defendant LIU, CC-1 caused the PERFECTUS predecessor entities to be merged into defendants PERFECTUS and PERFECTUS ACQUISITIONS.   Defendant LIU effectively owned and controlled defendants PERFECTUS and PERFECTUS ACQUISITIONS.

Overt Act No. 83:   In or about early 2015, defendant SHAO caused Aluminum Shapes to provide to CBP a presentation purportedly from PCA falsely claiming, among other things, that PCA manufactured the aluminum pallets, the pallets were suitable for use in chemical and metal industries, and the pallets had fully-sealed welds.

37

<u>Overt Act No. 84:</u>   In or about January 2015, at the direction of defendant LIU, CC-1 purported to transfer ownership of defendant PERFECTUS to a third-party when, in fact, defendant LIU retained control of defendant PERFECTUS.

<u>Overt Act No. 85:</u>   On or about March 6, 2015, defendant PERFECTUS transferred approximately $493,308 from Transport Account 2058 to an account in the name of Liaoning Zhongwang Import & Export Trade Co., Ltd. held in the PRC, as payment for the purchase of aluminum products.

<u>Overt Act No. 86:</u>   In or around April 2015, defendant LIU caused defendant CHINA ZHONGWANG to release its 2014 annual report, which stated that sales to the United States accounted for 11.67% of defendant CHINA ZHONGWANG's overall revenue in 2014.   Defendant CHINA ZHONGWANG stated that this revenue was the result of defendant CHINA ZHONGWANG's expansion of its production of deep-processed products, namely, aluminum pallets, to meet increasing demand for these products in the United States.

<u>Overt Act No. 87:</u>   On or about April 6, 2015, defendant PERFECTUS transferred approximately $1,947,140 from Transport Account 2058 to an account in the name of Dalian Liwang held in the PRC as payment for the purchase of aluminum products.

<u>Overt Act No. 88:</u>   On or about June 4, 2015, defendant SHAO falsely told the IRS that Global Aluminum's creditors were not related to any of its suppliers or manufacturers and that defendant SHAO was not related to the ZW Group or Dalian Liwang.

<u>Overt Act No. 89:</u>   On or about July 31, 2015, defendant LIU caused defendant CHINA ZHONGWANG to suspend trading of defendant CHINA ZHONGWANG's shares pending the release of defendants CHINA

ZHONGWANG and LIU's response to allegations of fraud made against defendants CHINA ZHONGWANG and LIU by a short seller of defendant CHINA ZHONGWANG's shares.

Overt Act No. 90:   On or about August 12, 2015, defendant LIU caused defendant CHINA ZHONGWANG to resume trading of defendant CHINA ZHONGWANG's shares and issued a specific disclosure responding to the short seller's allegations.   In the specific disclosure, defendants CHINA ZHONGWANG and LIU stated that the allegations made against defendants LIU and CHINA ZHONGWANG were groundless and contained misrepresentations and false allegations that defendant CHINA ZHONGWANG stated were designed to affect the price of defendant CHINA ZHONGWANG's shares.   In this announcement, defendant LIU caused defendant CHINA ZHONGWANG to make material false statements, including the following: (1) except for .04% of its total revenues, all revenue was generated from sales to independent third parties; (2) any stake in PCA and Aluminicaste briefly held by defendant LIU's family had been disposed of to an independent third party; and (3) Dalian Liwang, Qianxiang, and Boruixin were independent third parties.

Overt Act No. 91:   On or about September 10, 2015, defendant LIU caused defendant CHINA ZHONGWANG to issue a specific disclosure. In this specific disclosure, defendants LIU and CHINA ZHONGWANG made material false statements, including that defendant PERFECTUS, PCA, Aluminicaste, and GVA were third parties independent of defendants LIU and CHINA ZHONGWANG.

Overt Act No. 92:   In or about 2016, defendants LIU, SHAO, and PERFECTUS exported approximately 6,337 containers of aluminum pallets that were being held at the Irvine, Fontana, Ontario, and Riverside

1  Warehouses to GVA.

2      Overt Act No. 93:  In or about April 2016, defendant LIU caused

3  defendant CHINA ZHONGWANG to release its 2015 annual report, which

4  stated that sales to the United States accounted for 11.1% of

5  defendant CHINA ZHONGWANG's overall revenue in 2015.

6      Overt Act No. 94:  On or about December 27, 2016, defendant

7  SHAO submitted and caused to be submitted to the U.S. District Court

8  for the Central District of California a declaration falsely stating

9  that the PERFECTUS predecessor entities originally intended to sell

10  or lease the aluminum pallets in the United States, but none were

11  sold due to changes in market conditions and an unsuccessful

12  marketing strategy.

13      Overt Act No. 95:  On or about May 12, 2017, defendant LIU

14  caused defendant CHINA ZHONGWANG to issue a specific disclosure.  In

15  this disclosure, defendants LIU and CHINA ZHONGWANG falsely stated

16  that defendant CHINA ZHONGWANG's sales to third parties were

17  completed on an arms-length basis and that it had no arrangements

18  with these third parties to finance the purchase of its own products.

19      Overt Act No. 96:  On or about September 17, 2017, defendant

20  LIU caused defendant CHINA ZHONGWANG to issue a specific disclosure

21  stating that, after having spoken with defendant LIU, defendant CHINA

22  ZHONGWANG had re-affirmed that defendant LIU did not control and was

23  not the beneficial owner of defendant PERFECTUS.

24      Overt Act No. 97:  On or about October 2, 2017, an unindicted

25  co-conspirator and close family member of defendant LIU ("CC-4")

26  signed declarations filed with the U.S. District Court for the

27  Central District Court of California falsely claiming to be the

28  ultimate beneficial owner of the Irvine, Ontario, Fontana, and

1    Riverside Warehouses.

2         Overt Act No. 98:    On or about December 12, 2017, defendant

3    CHEN falsely testified in a deposition that defendant CHEN was the

4    ultimate beneficial owner of the Ontario, Irvine, and Fontana

5    Warehouses and that CC-2 was acting on defendant CHEN's behalf.

COUNTS TWO THROUGH TEN

[18 U.S.C. §§ 1343, 2(a)]

35.   The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 31, 33, and 34 of this Indictment as though fully set forth herein.

A.   SCHEME TO DEFRAUD

36.   Beginning in or about July 2008 and continuing to at least the date of this Indictment, within the Central District of California, and elsewhere, defendants ZHONGTIAN LIU, also known as ("aka") "Liu Zhongtian," aka "Chairman," aka "Uncle Liu," aka "UL," aka "Big Boss" ("defendant LIU"), CHINA ZHONGWANG HOLDINGS LIMITED, aka "ZW," aka "Mother Ship" ("defendant CHINA ZHONGWANG"), ZHAOHUA CHEN, aka "Chen Zhaohua," aka "Uncle Chen" ("defendant CHEN"), XIANG CHUN SHAO, aka "Johnson Shao" ("defendant SHAO"), defendant PERFECTUS ALUMINIUM INC., aka "Perfectus Aluminum Inc." ("defendant PERFECTUS"), PERFECTUS ALUMINUM ACQUISITIONS, LLC ("defendant PERFECTUS ACQUISITIONS"), SCUDERIA DEVELOPMENT, LLC ("defendant SCUDERIA DEVELOPMENT"), 1001 DOUBLEDAY, LLC ("defendant 1001 DOUBLEDAY"), VON KARMAN – MAIN STREET, LLC ("defendant VON KARMAN – MAIN STREET"), and 10681 PRODUCTION AVENUE, LLC ("defendant 10681 PRODUCTION AVENUE"), and others known and unknown to the Grand Jury, aiding and abetting each another, knowingly and with intent to defraud, devised, participated in, executed, and attempted to execute a scheme to defraud investors in defendant CHINA ZHONGWANG as to material matters, and to obtain money from such investors by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

37.   The scheme operated, in substance, as set forth in

42

paragraphs 33 and 34 of this Indictment.

B.   USE OF WIRES

38.   On or about the following dates, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants LIU, CHINA ZHONGWANG, CHEN, SHAO, PERFECTUS, PERFECTUS ACQUISITIONS, SCUDERIA DEVELOPMENT, 1001 DOUBLEDAY, VON KARMAN – MAIN STREET, and 10681 PRODUCTION AVENUE, and others known and unknown to the Grand Jury, aiding and abetting each other, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

| COUNT | DATE | INTERSTATE AND FOREIGN WIRING |
|-------|------|-------------------------------|
| TWO | 05/13/2014 | Email from an employee of the ZW Group, sent by means of interstate and foreign wires, to defendant SHAO in the Central District of California, asking for payment for aluminum. |
| THREE | 06/19/2014 | Transfer of approximately $1,126,080 from PCA Account 9191, by means of interstate and foreign wires, to an account in the name of Zhongwang China Investment (HK) Limited held in Hong Kong. |
| FOUR | 07/11/2014 | Transfer of approximately $4,463,369 from PCA Account 9191, by means of interstate and foreign wires, to an account in the name of Dalian Liwang held in the PRC. |
| FIVE | 07/21/2014 | Transfer of approximately $8,558,512 from PCA Account 9191, by means of interstate and foreign wires, to an account in the name of Dalian Liwang held in the PRC. |

| COUNT | DATE | INTERSTATE AND FOREIGN WIRING |
|-------|------|-------------------------------|
| SIX | 08/05/2014 | Transfer of approximately $244,800 from PCA Account 9191, by means of interstate and foreign wires, to an account held in the name of Zhongwang China Investment (HK) Limited held in Hong Kong. |
| SEVEN | 08/06/2014 | Transfer of approximately $5,027,807 from PCA Account 9191, by means of interstate and foreign wires, to an account in the name of Dalian Liwang held in the PRC. |
| EIGHT | 08/20/2014 | Email from defendant SHAO sent, from the Central District of California, by means of interstate and foreign wires, to an employee of ZW Group in the PRC requesting funds for rent and operational expenses of Aluminum Industrial and CAA. |
| NINE | 03/06/2015 | Transfer of approximately $493,308 from Transport Account 2058, by means of interstate and foreign wires, to an account in the name of Liaoning Zhongwang Import & Export Trade Co., Ltd. held in the PRC. |
| TEN | 04/06/2015 | Transfer of approximately $1,947,140 from Transport Account 2058, by means of interstate and foreign wires, to an account Dalian Liwang held in the PRC. |

COUNTS ELEVEN THROUGH SEVENTEEN

[18 U.S.C. §§ 545, 2]

39.   The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 31, 33, and 34 of this Indictment as though fully set forth herein.

40.   On or about the dates set forth below, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants ZHONGTIAN LIU, also known as ("aka") "Liu Zhongtian," aka "Chairman," aka "Uncle Liu," aka "UL," aka "Big Boss," CHINA ZHONGWANG HOLDINGS LIMITED, aka "ZW," aka "Mother Ship," ZHAOHUA CHEN, aka "Chen Zhaohua," aka "Uncle Chen," XIANG CHUN SHAO, aka "Johnson Shao," defendant PERFECTUS ALUMINIUM INC., aka "Perfectus Aluminum Inc.," PERFECTUS ALUMINUM ACQUISITIONS, LLC, SCUDERIA DEVELOPMENT, LLC, 1001 DOUBLEDAY, LLC, VON KARMAN - MAIN STREET, LLC, and 10681 PRODUCTION AVENUE, LLC, and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly, willfully, and with intent to defraud the United States, made out and passed, and caused to be made out and passed, through a customhouse of the United States, the false and fraudulent documents set forth below, in order to influence the actions of the United States regarding the importation into the United States of aluminum pallets:

//

//

45

| COUNT | DATE | FALSE AND FRAUDULENT DOCUMENT |
|---|---|---|
| ELEVEN | 05/19/2014 | Form 7501, bearing entry number W3303379083, falsely declaring that the 14,364 aluminum pallets from the PRC were not subject to the 2011 AD/CVD Orders. |
| TWELVE | 05/22/2014 | Form 7501, bearing entry number W3303379737, falsely declaring that the 4,032 aluminum pallets from the PRC were not subject to the 2011 AD/CVD Orders. |
| THIRTEEN | 05/23/2014 | Form 7501, bearing entry number HR702108724, falsely declaring that the 10,584 aluminum pallets from the PRC were not subject to the 2011 AD/CVD Orders. |
| FOURTEEN | 05/28/2014 | Form 7501, bearing entry number HR702108708, falsely declaring that the 1,530 aluminum pallets from the PRC were not subject to the 2011 AD/CVD Orders. |
| FIFTEEN | 05/30/2014 | Form 7501, bearing entry number W3303381550, falsely declaring that the 10,584 aluminum pallets from the PRC were not subject to the 2011 AD/CVD Orders. |
| SIXTEEN | 06/06/2014 | Form 7501, bearing entry number HR702109383, falsely declaring that the 6,048 aluminum pallets from the PRC were not subject to the 2011 AD/CVD Orders. |
| SEVENTEEN | 06/27/2014 | Form 7501, bearing entry number W3303385676, falsely declaring that the 10,080 aluminum pallets from the PRC were not subject to the 2011 AD/CVD Orders. |

COUNTS EIGHTEEN THROUGH TWENTY-FOUR

[18 U.S.C. §§ 1956(a)(2)(A), 2]

41.  The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 31, 33, and 34 of this Indictment as if fully set forth herein.

42.  On or about the dates set forth below, in Los Angeles, Orange, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants ZHONGTIAN LIU, also known as ("aka") "Liu Zhongtian," aka "Chairman," aka "Uncle Liu," aka "UL," aka "Big Boss," CHINA ZHONGWANG HOLDINGS LIMITED, aka "ZW," aka "Mother Ship," ZHAOHUA CHEN, aka "Chen Zhaohua," aka "Uncle Chen," XIANG CHUN SHAO, aka "Johnson Shao," defendant PERFECTUS ALUMINIUM INC., aka "Perfectus Aluminum Inc.," and PERFECTUS ALUMINUM ACQUISITIONS, LLC, and others known and unknown to the Grand Jury, aiding and abetting each other, transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, and willfully caused others to transport, transmit, and transfer, and attempt to transport, transmit, and transfer funds to a place in the United States from and through a place outside of the United States, with the intent to promote the carrying on of specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and passing false and fraudulent papers through a customhouse, in violation of Title 18, United States Code, Section 545, through the following transactions:

//

//

| COUNT | DATE | TRANSACTION |
|---|---|---|
| EIGHTEEN | 06/05/2014 | Wire transfer of approximately $999,975 to PCA Account 9191 from an account in the name of Rainbow Bright Inc. Limited held in Hong Kong. |
| NINETEEN | 07/03/2014 | Wire transfer of approximately $989,975 to PCA Account 9191 from an account in the name of Rainbow Bright Inc. Limited held in Hong Kong. |
| TWENTY | 07/16/2014 | Wire transfer of approximately $1,539,975 to PCA Account 9191 from an account in the name of Grand Famous Trading Limited held in Hong Kong. |
| TWENTY-ONE | 07/25/2014 | Wire transfer of approximately $1,699,975 to PCA Account 9191 from an account in the name of Grand Famous Trading Limited held in Hong Kong. |
| TWENTY-TWO | 08/05/2014 | Wire transfer of approximately $599,975 to PCA Account 9191 from an account held in the name of Kun Hong Trade Co., Limited held in Hong Kong. |
| TWENTY-THREE | 08/05/2014 | Wire transfer of approximately $3,099,975 to PCA Account 9191 from an account in the name of Kun Hong Trade Co., Limited held in Hong Kong. |
| TWENTY-FOUR | 10/17/2014 | Wire transfer of approximately $1,299,975 to PCA Account 9191 from an account in the name of Easy Able International (HK) held in Hong Kong. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Ten of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

a.   all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

b.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 545]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982 and 545, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Eleven through Seventeen of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States the following:

(a) All right, title, and interest in any and all property, real or personal constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of each such offense;

(b)  Any and all merchandise introduced into the United States in violation of Title 18, United States Code, Section 545, or the value thereof; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred,

sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1 | FORFEITURE ALLEGATION THREE

2 | [18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

3 |     1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4 | Procedure, notice is hereby given that the United States will seek

5 | forfeiture as part of any sentence, pursuant to Title 18, United

6 | States Code, Section 982(a)(1) and Title 28, United States Code,

7 | Section 2461(c), in the event of any defendant's conviction of the

8 | offenses set forth in any of Counts Eighteen through Twenty-Four of

9 | this Indictment.

10 |     2.    Any defendant so convicted shall forfeit to the United

11 | States of America the following:

12 |     (a)  Any property, real or personal, involved in such

13 | offense, and any property traceable to such property; and

14 |     (b)  To the extent such property is not available for

15 | forfeiture, a sum of money equal to the total value of the property

16 | described in subparagraph (a).

17 |     3.    Pursuant to Title 21, United States Code, Section 853(p),

18 | as incorporated by Title 18, United States Code, Section 982(b)(1),

19 | and Title 18, United States Code, Section 982(b)(2), any defendant so

20 | convicted shall forfeit substitute property, if, by any act or

21 | omission of said defendant, the property described in the preceding

22 | paragraph, or any portion thereof: (a) cannot be located upon the

23 | exercise of due diligence; (b) has been transferred, sold to, or

24 | deposited with a third party; (c) has been placed beyond the

25 | jurisdiction of the court; (d) has been substantially diminished in

26 | value; or (e) has been commingled with other property that cannot be

27 | divided without difficulty.  Substitution of assets shall not be

28 | ordered, however, where the convicted defendant acted merely as an

intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.


A TRUE BILL


/s/
_____
Foreperson


NICOLA T. HANNA
United States Attorney



LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

POONAM G. KUMAR
Assistant United States Attorney
Deputy Chief, Major Frauds Section

EDDIE A. JAUREGUI
Assistant United States Attorney
Major Frauds Section

JULIAN L. ANDRÉ
Assistant United States Attorney
Major Frauds Section